FILED'10 SEP 15 14:27USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**CHRISTY LYNN NELSON,**                        Civil No. 09-6191-CL

Plaintiff

v.                                             **FINDINGS AND**
                                               **RECOMMENDATION**

**MICHAEL J. ASTRUE,**
Commissioner of Social Security

Defendant.

CLARKE, Magistrate Judge:

Plaintiff Christy Nelson ("Nelson") seeks judicial review of the Social Security Commissioner's final decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. This

1 - FINDINGS AND RECOMMENDATION

court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's decision should be affirmed.

## BACKGROUND

Born in 1970 (Tr. 74),[1] Nelson reports a high school education, two years of vocational training as a cosmetologist (Tr. 97-98), and work as a fast food worker, gardener, hairdresser, housekeeper, and office worker. Tr. 100. Nelson alleges disability since September 19, 2003 (Tr. 74), due to fibromyalgia, arthritis, tronchanteric bursitis, chronic sciatica, bipolar disorder, and post-traumatic stress disorder ("PTSD"). Tr. 89. The Commissioner denied her applications initially and upon reconsideration. Tr. 39-47, 640A-H.

An Administrative Law Judge ("ALJ") held a hearing on November 20, 2008. Tr. 641-88. On January 30, 2009, the ALJ found Nelson not disabled. Tr. 15-25. The Appeals Council denied review of the matter on May 8, 2009 (Tr. 7-9), and Nelson presently appeals.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520; 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. 20 C.F.R. §§ 404.1509;

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on December 2, 2009 (Docket # 11).

404.1520(a)(4)(ii); 416.909, 416.920(a)(4)(ii).   If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations.   20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).   If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments.  20 C.F.R. §§ 404.1520(e); 416.920(e); Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled.  If the ALJ finds that the claimant's RFC precludes performance of her past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f); 416.920(a)(4)(v); 416.920(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, she is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If

the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g):

404.1566; 416.920(g); 416.966.

## THE ALJ'S FINDINGS

The ALJ found that Nelson did not engage in substantial gainful activity after her alleged

onset date. Tr. 549. At step two, the ALJ found Nelson's fibromyalgia, trochanteric bursitis, major

depression, bipolar disorder, and PTSD "severe." Tr. 17. The ALJ found that these impairments

did not meet or equal a listed disorder (Tr. 18), and found that Nelson retained the RFC to perform

medium work "except for sitting standing, and walking six hours each in an eight hour day." Tr.

19. The ALJ additionally found that Nelson's mental conditions require the following limitations:

> understanding and remembering simple or routine instructions and
> procedures; sustaining attention to carry out simple or routine
> instructions and procedures constantly; requiring no interaction with
> the public; requiring no frequent interaction with coworkers and
> supervisors; and needing routine work settings that do not require
> frequent or rapid accomodation of new information.

*Id.* The ALJ found Nelson's symptom testimony not credible. Tr. 22.

At step four, the ALJ found Nelson could perform her prior work as a housekeeper, but

found that this work was not "past relevant work" under the Commissioner's regulations. Tr. 23.

The ALJ therefore proceeded to step five, where he found Nelson able to perform work in the

national economy. Tr. 24. The ALJ therefore found Nelson not disabled.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied

proper legal standards and the findings are supported by substantial evidence in the record. 42

U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193

(9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see also Batson*, 359 F.3d at 1193.

## ANALYSIS

Nelson challenges the ALJ's credibility finding, analysis of the medical evidence, and step five findings. Nelson consequently asserts that the ALJ should have found her disabled.

### I.    Credibility

Nelson challenges the ALJ's evaluation of her credibility.

#### A.    Standards: Credibility

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284; *see* also SSR 96-7p at *3 (available at 1996 WL 374186). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Smolen*, 80 F.3d at 1284. Once a claimant establishes an impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

**B.    Analysis**

The ALJ found Nelson's symptom testimony not credible. Tr. 22. The ALJ's analysis cited Nelson's activities of daily living, inconsistent testimony, work history, and medical record. Tr. 19-23. Nelson challenges the ALJ's findings regarding her medical evidence and her inconsistent testimony only. Pl.'s Opening Br. 11-14.

**a.    Activities of Daily Living**

The ALJ cited Nelson's activities of daily living, including her ability to care for herself and her young daughter, use public transportation, visit friends, complete craft projects, walk and go camping. Tr. 18. The ALJ may cite a claimant's activities of daily living in his credibility analysis. *Smolen*, 80 F.3d at 1284. Nelson does not challenge the ALJ's findings regarding her activities of daily living, and these findings should be affirmed.

///

6 - FINDINGS AND RECOMMENDATION

**b.    Inconsistent Testimony**

The ALJ also cited Nelson's inconsistent testimony.  The ALJ cited Nelson's reports regarding her ability to drive and her employment record. Tr. 21, 23. The ALJ also cited Nelson's reports of sexual abuse. Tr. 20-21. Nelson challenges the ALJ's inference that her statements were inconsistent with her allegations of total disability, but does not challenge the ALJ's remaining findings. Pl.'s Opening Br. 14.

**1.    General Statements**

The ALJ specifically cited Nelson's statement that her ability to drive is affected by her anxiety following a closed head injury, and her statement that she did not drive due to a suspended license. Tr. 21. The record shows that Nelson made both statements. On October 15, 2008, Nelson told examining psychologist Dr. Hughey that she had a closed head injury, that she could not remember the date of this injury, and that it makes her anxious while driving. Tr. 572. On October 5, 2006, Nelson told examining psychologist Dr. Truhn that she did not drive because her license was suspended due to unpaid speeding citations and driving without insurance and valid vehicle registration. Tr. 159. This court must affirm the ALJ's interpretation of the evidence when two reasonably plausible interpretations arise. *Batson*, 359 F.3d at 1193. Here, the ALJ inferred that Nelson gave contradictory explanations for her driving record. This inference is based upon the record and should therefore be affirmed.

The ALJ also noted Nelson's inconsistent statements regarding her work history. Tr. 23. The ALJ cited Nelson's report to examining psychologist Dr. Truhn that she had been employed in twenty jobs, the longest of which lasted only six months, and found that this report directly contradicted statements showing that she maintained the same employment with the same

employers for a number of years. Tr. 23. The record supports these findings. Nelson told Dr.

Truhn on October 5, 2006, that she was most recently employed in 2003 doing office work, that her

"other longest job" was for six months in 2000 working in an office position through a Department

of Human Services program, and that she had been employed in "about 20 different jobs." Tr. 159.

Nelson submitted a work history report to the record in conjunction with her initial disability

application. Tr. 90. Here Nelson wrote that she worked in fast food between 1990 and 1993,

worked as a gardener between 1990 and 1994, worked as a hairdresser between 1994 and 1997,

worked as a housekeeper between 1990 and 1994, and worked in offices between 1997 and 2003.

*Id.* These statements contravene Nelson's report that her longest job last six months. The ALJ's

finding is based upon a reasonable reading of the record and should therefore be affirmed.

In summary, the record supports the ALJ's citations regarding Nelson's contradictory

statements. While differing interpretations may arise, this court must affirm the ALJ's findings if

they are based upon inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. The

ALJ's credibility analysis may cite a claimant's contradictory testimony. *Smolen*, 80 F.3d at 1284.

Nelson does not challenge these findings and they are based upon the record. The ALJ's finding

regarding Nelson's inconsistent statements pertaining to her driving and work record should be

affirmed.

### 2.    Sexual Abuse

The ALJ also found that Nelson made "wildly" inconsistent statements (Tr. 20) regarding

her reports of sexual abuse, and inferred that these statements detracted from her allegation of

disability. Tr. 20-21. The ALJ specifically found that Nelson did not name the alleged perpetrator

of sexual abuse that she reported occurring when she was seven years old to all mental healthcare providers. Tr. 21.

The record shows that Nelson consistently reported childhood sexual abuse to numerous mental health providers throughout the period under review. Tr. 122, 142, 156-57, 318, 323, 571, 620. The ALJ cited inconsistencies within Nelson's reporting regarding who abused her at what age. Tr. 20. It is inappropriate for the ALJ to infer that such inconsistencies impugn Nelson's credibility regarding her allegation of disability. The record regarding Nelson's reports of sexual abuse is generally consistent, and these reports should be addressed with sensitivity. It is unreasonable of the ALJ to cite minor inconsistencies in a sexual abuse victim's reporting in order to find the victim generally not credible regarding her allegation of disability. This reasoning should not be affirmed.

### c.    Medical Record

Finally, the ALJ found Nelson's medical record regarding her psychological impairments and treatment "unsubstantiated and thin." Tr. 22. The ALJ may not base his credibility determination solely upon the medical record, *Robbins*, 466 F.3d at 883, but the ALJ may cite a claimant's medical record in conjunction with other credibility findings. *Smolen*, 80 F.3d at 1284.

The ALJ specifically found that psychological testing did not support Nelson's claim that she had markedly impaired difficulties in concentration, persistence, and pace. Tr. 19. The record before this court supports this finding. Examining psychologist Dr. Truhn concluded that Nelson's psychological testing showed "poor concentration and attention" on October 5, 2006. Tr. 165. Treating psychologist Dr. Evans noted Nelson's report of "difficulty sustaining focus and

concentration for long periods of time . . . ." on November 7, 2008. Tr. 555. Finally, examining

psychologist Dr. Hughey concluded that Nelson's psychological testing showed "some deficits of

immediate memory" on November 15, 2008. Tr. 574. These conclusions do not establish "marked"

deficiencies in concentration, persistence, and pace. Nelson's submission to the contrary is

therefore rejected and the ALJ's findings regarding Nelson's medical record and her credibility on

this matter are affirmed.

The ALJ's finding that Nelson received "spotty" mental health treatment (Tr. 22) is also

supported by the record. The ALJ noted that Nelson received treatment between March and June

2005 at Deschutes County Mental Health ("DCMH") and in December 2005, February 2006, and

July and August 2006 at Linn County Mental Health ("LCMH"). *Id.* The ALJ noted that Nelson

did not attend therapy again until August 2007, and returned only once more in March 2008. *Id.*

The record supports this finding. Tr. 122-39, 142-46, 150, 272, 287-90, 302-25, 556-57.

The record additionally shows that after Nelson's November 2008 hearing before the ALJ, Nelson

returned once more to LCMH in November 2008 (Tr. 639-40), and attended one final visit in

December 2008. Tr. 637-39. The ALJ's credibility analysis may cite a claimant's failure to seek

treatment. *Smolen*, 80 F.3d at 1284. The ALJ's finding that Nelson's mental health treatment was

intermittent is based upon the record and should be affirmed.

Finally, the record supports the ALJ's finding that Nelson's report of a traumatic head injury

is uncorroborated by medical records. Tr. 22. While Nelson reported such an injury to Dr. Hughey

on October 14, 2008 (Tr. 572), the record contains no corroboration of this report. This finding

should also be affirmed.

10 - FINDINGS AND RECOMMENDATION

### C.    Credibility Conclusion

This court may affirm an ALJ's credibility conclusion while rejecting some elements of it. *Batson*, 359 F.3d at 1197. Here, the ALJ's finding regarding Nelson's reports of sexual abuse are inappropriate. However, the ALJ's remaining findings are based upon the record and the correct legal standards. The ALJ's credibility determination should therefore be affirmed.

## II.    Medical Source Statements

Nelson challenges the ALJ's analysis of treating physicians Dr. Hindmarsh, treating psychologist Dr. Evans, and examining psychologist Drs. Hughey and Truhn.

### A.    Standards: Medical Source Statements

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). However, when making that determination, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). In addition, the ALJ must ordinarily give greater weight to opinions rendered by specialists. 20 C.F.R. §§ 404.1527(d)(5); 416.927(d)(5).

///

///

**B.      Analysis**

     **a.      Treating Physician Dr. Hindmarsh**

Nelson challenges the ALJ's analysis of a chart note produced by treating physician Dr. Hindmarsh on November 13, 2008.  Pl.'s Opening Br., 19.

     **1.      Dr. Hindmarsh's Opinion**

Dr. Hindmarsh treated Nelson between August 2, 2007, and May 14, 2008.  Tr. 461, 488.  During this time Dr. Hindmarsh diagnosed back and pelvic pain, ovarian cysts, cystitis, "bipolar depression," fibromyalgia and chronic pain.  Tr. 461-64, 484-91.  On November 13, 2008, Dr. Hindmarsh signed an office visit chart note.  Tr. 569.  The document is entitled "11/13/2008 - Office Visit: Paperwork/MRI."  Pl.'s Ex. A, 1.[2]  The first page of the document begins with a "history of present illness" section, followed by ellipses, the name "Erin McGinley," the date, and the time.  The narrative begins, "Reports recurrent bladder infection."  *Id.* at 1.  The history cites Nelson's report of a bladder infection, her report of treatment with psychiatrist Dr. Evans, and her report that "she feels about as good as she can at the present time."  *Id.*  The report continues that, "she is currently unable to work for multiple reasons: bipolar effective disorder, PTSD, sciatica, endometriosis with pelvic pain, multiple medications that make concentration very difficult, asthma, frequent severe headaches, fibromyalgia."  *Id.*  The narrative does not clearly indicate whether Nelson reported these limitations to McGinley, whether McGinely assessed them herself, or whether Hindmarsh assessed them in conjunction with the signed portion of the chart note appearing four pages later. Ex. A, 4, Tr. 569. Dr. Hindmarsh's signature is accompanied by clinical

---

[2]The ALJ cites "Exhibit 21F," which is missing from the record before this court. Plaintiff supplied the document, labeled Pl.'s Ex. A.

"impression and recommendations" of bipolar depression, asthma, back pain, cystitis, and endometriosis. Tr. 568-69. These diagnoses are annotated by drug treatment information only, and carry no indications of Dr. Hindmarsh's opinions regarding any symptoms or work-related limitations stemming from these diagnoses. *Id.*

### 2.    The ALJ's Analysis

The ALJ cited Dr. Hindmarsh's November 13, 2008 chart note. Tr. 19 (citing Ex. 21 F at 2). The ALJ first noted that disability determinations are reserved for the Commissioner. *Id.* This is correct, 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1), although this reasoning alone does not suffice to reject Dr. Hindmarsh's opinion in its entirety.

The ALJ also found that Dr. Hindmarsh did not explain the basis for the November 13, 2008, language regarding Nelson's inability to work. *Id.* The ALJ concurrently found that the November 13, 2008, language was not supported by Dr. Hindmarsh's own clinical notes, and that it was inconsistent with treatment notes from other healthcare providers. *Id.*

The ALJ may reject physician opinions that are brief, conclusory, and unsupported by clinical notes and findings. *Bayliss*, 427 F.3d at 1216. Dr. Hindmarsh's November 13, 2008 chart note contains only the introductory narrative described above indicating that Nelson was not presently working "for multiple reasons," with citation to Nelson's many diagnoses. Ex. A, 1. Dr. Hindmarsh's November 13, 2008 chart note provides no further explanation for any conclusion rendered by Dr. Hindmarsh himself that Nelson is unable to work. Ex. A, Tr. 568-69. The ALJ's reasoning is therefore affirmed on this point. Dr. Hindmarsh's remaining chart notes produced during the approximate ten-month period that he treated Nelson make no reference to workplace

limitations. Tr. 461-65, 484-91. Dr. Hindmarsh explicitly stated that Nelson had "normal attention span and concentration." Tr. 487. The ALJ's finding that Dr. Hindmarsh's clinical notes do not support his November 13, 2008 chart note regarding any workplace limitations should therefore be affirmed.

In summary, the ALJ gave adequate reasons for rejecting any work-related limitations cited in Dr. Hindmarsh's November 13, 2008 chart note. These findings should be affirmed.

### b.    Treating Psychologist Dr. Evans

The record before this court shows that treating psychologist Dr. Evans produced chart notes for Nelson on five occasions between August 13, 2006, and December 2008. Dr. Evans performed an intake interview on July 13, 2006 (Tr. 128-41), a "yearly assessment" on August 27, 2007 (Tr. 556-59), and formulated "treatment plans" on August 31, 2006, and November 18, 2008. Tr. 136-37, 639-40. One chart note, on December 5, 2008, represents a treatment session. Here Dr. Evans noted that Nelson brought in a list of self-reported traumatic events. Tr. 639-40. Dr. Evans assessed PTSD throughout this period. Tr. 128041, 136-37, 556-59, 639-40.

On November 7, 2008, Dr. Evans submitted a letter to the record following a request by Nelson's counsel regarding her present application for benefits. Tr. 555. Dr. Evans stated that Nelson participated in individual and group therapy at LCMH between July 13, 2006, and the date of her letter, with "brief periods of less frequent service" during this time. Tr. 555. Dr. Evans wrote:

> Although I am not qualified to comment on [Nelson's] ability to function in a work setting, since I have not directly assessed her capacity in this area, I can comment on the behavior she has reported to me that may bear on this issue. Ms. Nelson reports that she

experiences intense anxiety that interferes with her ability to interact effectively with other people. In addition, she reports difficulty sustaining focus and concentration for long periods of time, due to distracting anxiety, a heightened sensitivity the stimuli around her, and/or depression. She often reports poor, inadequate sleep and experiences panic attacks at least several times per week. Due to the low energy and amotivatoin associated with depression, she also finds regular, daily participation in activities very difficult.

Tr. 555.

The ALJ cited Dr. Evans's opinion and found Dr. Evans's November 7, 2008 workplace limitations unsupported by Dr. Evans's treatment notes. Tr. 20. Here the ALJ cited Dr. Evans's mental status examinations. *Id.* As noted, the ALJ may also reject a physician opinion that is brief, conclusory, or unsupported by clinical notes and findings. *Batson*, 427 F.3d at 1216. The record supports this finding. The record contains no treatment notes explaining the basis for Dr. Evans's diagnosis or associated workplace limitations prior to Dr. Evans's November 7, 2008 letter. The treatment note produced on December 5, 2008, after Dr. Evans's November 7, 2008 letter, shows that Nelson arrived with a list of traumatic events supporting her diagnosis, and does not show further basis for Dr. Evans's workplace limitations. Tr. 637-38.

The ALJ also rejected Dr. Evans's workplace limitations because they were based upon Nelson's reporting. Tr. 20. The ALJ may reject a physician's opinion predicated upon reports of a claimant found not credible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ appropriately found Nelson not credible, for the reasons discussed above, and Dr. Evans clearly stated that his assessment of Nelson's workplace functioning was based upon Nelson's reporting. Tr. 555. The ALJ's reasoning is based upon the record and should therefore be affirmed.

In summary, the ALJ properly rejected the workplace limitations Dr. Evans described in her

15 - FINDINGS AND RECOMMENDATION

November 7, 2008 letter to the record.

### c.    Examining Psychologist Dr. Hughey

Leia Hughey, Ph.D., evaluated Nelson on October 17, 2008, and submitted a report to the record on November 15, 2008. Tr. 571-75. Dr. Hughey performed a clinical interview and testing, and diagnosed PTSD, with a rule-out diagnosis of borderline personality disorder. Tr. 574. Dr. Hughey based this diagnosis upon Nelson's responses to the Personality Assessment Inventory test. Tr. 574. Dr. Hughey stated that Nelson's test responses did not indicate malingering. *Id.*

The ALJ cited Dr. Hughey's opinion, and first noted that Dr. Hughey's opinion was based upon Nelson's self-reporting on a personality test. Tr. 20. The ALJ also noted that Dr. Hughey's additional testing showed no secondary gain motives, but rejected Dr. Hughey's report because it accepted Nelson's sexual abuse reports, which the ALJ deemed not credible. *Id.*

The ALJ may reject a medical source opinion based upon voluntary testing performed by a claimant appropriately found not credible. *Thomas v. Barnhart*, 278 F.3d 947, 953 (9th Cir. 2002). This reasoning is valid regarding the ALJ's rejection of Dr. Hughey's personality testing.

As noted, the ALJ may also reject a medical source opinion to the extent that it is predicated upon reports of a claimant found not credible. *Tonapetyan*, 242 F.3d at 1149. The ALJ's rejection of Dr. Hughey's opinion so far as it is based upon Nelson's inconsistent reporting, in a generalized manner, should therefore be affirmed. However, as noted above, this court will not affirm the ALJ's rejection of Nelson's reports of sexual abuse. The ALJ's rejection of Dr. Hughey's opinion specifically cited Nelson's inconsistent statements regarding her sexual abuse. Tr. 20. This reasoning for the rejection of Dr. Hughey's report for this reason is not affirmed.

16 - FINDINGS AND RECOMMENDATION

In summary, despite his inappropriate citation to Nelson's reports of sexual abuse, the ALJ provided adequate reasons for rejecting Dr. Hughey's opinion. The ALJ's analysis of Dr. Hughey's opinion should be affirmed.

### d.    Examining Psychologist Dr. Truhn

Examining psychologist Dr. Truhn evaluated Nelson on October 5, 2006. Tr. 154-65. Dr. Truhn administered numerous psychological tests and diagnosed "major depressive disorder recurrent, severe with psychotic features," chronic PTSD, dysthmia, and a panic disorder, with a Global Assessment of Functioning[3] score of 38. Tr. 164. Dr. Truhn stated that Nelson "experiences severe" symptoms, and recommenced that she participate in intensive therapy treatment. Tr. 165. Dr. Truhn concluded that, "There is a chance that her attention and concentration, including intellectual and cognitive issues are depressed" due to Nelson's psychological disorders. *Id.* Dr. Truhn also concluded that Nelson's intelligence testing showed poor concentration and attention, and that neuropsychological testing showed that her processing speed "seems to be slowed." *Id.* Dr. Truhn finally wrote, "Ms. Nelson's prognosis is guarded to poor. The symptoms are chronic . . . They have significantly affected her interpersonal, vocational and environmental factors." Tr. 165. Dr. Truhn here noted that Nelson has had "numerous employment activities lasting six months or less." *Id.*

The ALJ discussed Dr. Truhn's opinion, and found Dr. Truhn's conclusions unsupported

---

[3]The GAF scale is used to report a clinician's judgment of the patient's overall psychological, social and occupational functioning on a scale of 1 to 100. It does not include impairment in functioning due to physical or environmental limitations. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th Ed., Text Revision, 2002)("*DSM*"), 34.

by his evaluation and test results. Tr. 19. The ALJ specifically found that Dr. Truhn's testing showed that Nelson had an average IQ, which contradicted and did not support Dr. Truhn's finding that Nelson had marked limitations in concentration, persistence, and pace. *Id.* The ALJ also found that Nelson's trail-making test result was not valid because Nelson gave "less than full effort." *Id.* Finally, the ALJ found that other evidence in the record, specifically the opinion of Dr. Hughey and various average test results, contradicted Dr. Truhn's November 2006 opinion. Tr. 19-20.

Nelson asserts that the ALJ selectively read Dr. Truhn's report. Pl.'s Opening Br. 14-15. The ALJ may not isolate portions of the record, *Lingenfelter*, 504 F.3d at 1035, but, as noted, when two reasonably plausible interpretations of the record arise, this court must affirm the ALJ's decision. *Batson*, 359 F.3d at 1193.

Nelson first argues that the ALJ's suggestion that she gave less than full effort on Dr. Truhn's Trail Making tests is not based upon the record. Pl.'s Opening Br. 15. Under his "Trail Making Test" heading, Dr. Truhn surmised Nelson's test results:

> Ms. Nelson's scores ranged from moderately impaired to average when compared to others her own age. Her Composite Index fell at the mild impairment range when compared to others her own age. During the neuropsychological screening test she had complained of fatigue affecting her concentration and attention and it was one of the last tests administered. There is a chance that she does not experience an organic cognitive disorder but rather her cognitive functioning is impaired because of fatigue and problems with concentration and attention.

Tr. 162. This narrative does not support the ALJ's characterization that Nelson gave "less than full effort" on her trail making test. This particular finding should not be affirmed. Nelson does not point to the effect of this error. "Mild impairment" in trail-making neuropsychological testing is

consistent with the ALJ's RFC limiting Nelson to "understanding and remembering simple or routine instructions and procedures; sustaining attention to carry out simple or routine instructions and procedures constantly" in "routine work settings that do not require frequent or rapid accommodation of new information." Tr. 19. An error inconsequential to the ALJ's ultimate disability determination is harmless. *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008). The ALJ's mischaracterization regarding Nelson's effort on Dr. Truhn's trail making test does not effect the ALJ's RFC determination. Therefore, this error does not warrant reversal.

Nelson next argues that the ALJ misinterpreted her Minnesota Multiphasic Personality Inventory ("MMPI-2") scores in finding that her score suggested exaggeration of symptoms. Pl.'s Opening Br. 15. Dr. Truhn administered the MMPI and surmised that Nelson's raw scores could indicate chronic psychopathology, and that these scores were also consistent with borderline personality disorder and individuals that are "generally psychologically overwhelmed." Tr. 163. Dr. Truhn also stated that individuals with scores similar to Nelson's may have a "strong psychological component to [their] somatic complaints," and "there is often is a clear secondary gain associated with [their] physical complaints." *Id.*

The ALJ noted these findings and concluded that Nelson's "extremely elevated scores showed she is exaggerating her mental symptoms." Tr. 19. The ALJ's finding that Nelson's scores suggested exaggeration of mental symptoms is congruent with Dr. Truhn's conclusion that Nelson's scores are consistent with somatic complaints and clear secondary gain. While the ALJ may not chastise a claimant merely for seeking benefits, *Ratto v. Sec'y, Dept. Health and Human Serv.*, 830 F. Supp. 1415, 1428 (D. Or. 1993), Dr. Truhn's explanatory notes are consistent with the ALJ's

characterization of these findings as consistent with "exaggeration." While the ALJ's characterization was artless, it nonetheless reflects the character of Dr. Truhn's report, and should therefore be affirmed.

In summary, the record supports the ALJ's findings regarding Dr. Truhn's opinion, except as noted. These findings should be affirmed.

### e.    Conclusion: Medical Source Statements

This court will not affirm the ALJ's assessment of the medical record so far as it is predicated upon inferences drawn from Nelson's reports of sexual abuse, for the reasons explained above. *Supra*, 9. The ALJ's remaining findings regarding Drs. Hindmarsh, Evans, Hughey, and Truhn are based upon the record, except as noted. The ALJ's error regarding his characterization of Dr. Truhn's report addressing Nelson's Trail Making Tests does not establish a workplace limitation. Any error is therefore harmless. *Carmickle*, 533 F.3d at 1162. The ALJ's remaining findings and conclusions regarding the medical record should therefore be affirmed.

## III.    The ALJ's Step Five Findings

Nelson finally asserts that the ALJ made erroneous findings at step five in the sequential proceedings. Pl.'s Opening Br. 20 She specifically asserts that the ALJ should have included limitations assessed by Drs. Hindmarsh, Evans, Hughey, and Truhn, as well as in her own testimony, in his hypothetical questions to the vocational expert. *Id.*

After an ALJ determines that a claimant cannot perform past relevant work at step four, the ALJ must determine if the claimant can perform work in the national economy at step five. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). Here the ALJ may draw upon the testimony of a

20 - FINDINGS AND RECOMMENDATION

vocational expert, and the ALJ's questions to the vocational expert must include limitations that are properly supported by the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). The ALJ presently asked the vocational expert to consider an individual with the limitations expressed in Nelson's RFC assessment. Nelson fails to show that the ALJ's RFC assessment erroneously omitted any workplace limitations. The ALJ's finding that Nelson was not disabled at step five in the sequential evaluation is therefore affirmed.

## CONCLUSION AND RECOMMENDATION

The Commissioner's decision that Nelson did not suffer from disability, and is not entitled to benefits under Titles II and XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision should be AFFIRMED.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. *Objections to this Report and Recommendation, if any, are due by October 4, 2010. If objections are filed, any response to the objections are due by October 21, 2010, see* Federal Rules of Civil Procedure 72 *and 6*.

Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

21 - FINDINGS AND RECOMMENDATION

DATED this *15* day of September, 2010.

_____
Mark D. Clarke
United States Magistrate Judge

22 - FINDINGS AND RECOMMENDATION